690 So.2d 948 (1997)
Gracie Rosaline Willock OWENS, Plaintiff-Appellee,
v.
Reuben WILLOCK and Gloria Willock, Defendants-Appellants.
No. 29595-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1997.
Rehearing Denied March 27, 1997.
*949 Bobby L. Culpepper & Associates by Teresa C. Carroll, for Defendants-Appellants.
Teat and Avery by Darrell R. Avery, Jonesboro, for Plaintiff-Appellee.
Before MARVIN, C.J., and WILLIAMS and PEATROSS, JJ.
PEATROSS, Judge.
In this Indian child custody case, defendants, Reuben and Gloria Willock, appeal an adverse judgment which sustained the exception of jurisdiction filed by plaintiff, Gracie Rosaline Willock Owens, denied defendants' reconventional demand for custody and ordered the immediate return of the child, A.G.O., to the plaintiff.
For the following reasons, we affirm the judgment of the trial court.

FACTS
On July 16, 1990, A.G.O., was born to Wilbur Skin and Elise Willock who had tribal affiliations with the Selawik IRA Council and the Kotzebue IRA Council. The Kotzebue IRA Council ("Council"), on January 30, 1991, ratified the adoption of A.G.O. by plaintiff. Plaintiff subsequently agreed to the adoption of A.G.O. by defendants. In March, 1992, plaintiff gave physical custody of A.G.O. to the defendants, who have since raised the child. On February 13, 1995, the Council, in Resolution 95-04, granted temporary custody of A.G.O. to defendants. In this resolution the Council recognized that A.G.O. was a lineal descendant of the Native Village of Kotzebue, that plaintiff had legally adopted the child and that plaintiff was voluntarily relinquishing her parental rights in favor of defendants.
The Council, however, on November 22, 1995, in Resolution 95-53, revoked the defendants' temporary custody granted in Resolution 95-04 because plaintiff had revoked her consent to the adoption of the child by defendants. The Council also ordered the return of the child to plaintiff and denied the application for adoption of A.G.O. filed by defendants. On December 5, 1995, plaintiff executed a written withdrawal of consent to the adoptive placement of A.G.O. with defendants.
Plaintiff filed suit on March 5, 1996, in Jackson Parish, Louisiana, seeking to enforce the order of the Kotzebue IRA Council. Defendants filed exceptions to the suit based on the fact that plaintiff had not made the Council order executory in Louisiana in accordance with La.C.C.P. art. 2541 and LSA-R.S. 13:4242. Defendants also filed a reconventional demand seeking custody of A.G.O. The trial court sustained the exceptions and gave plaintiff 60 days to cure the defects. Plaintiff not only filed an amended petition which cured the defect, but she also filed an exception of jurisdiction to defendants' reconventional demand for custody. A hearing was held on the exception of jurisdiction.
The trial court sustained the plaintiff's exception of jurisdiction, denied all other exceptions filed by defendants, dismissed the rule for custody and ordered immediate return of A.G.O. to plaintiff. This court denied defendants' application for supervisory writs, finding that the appropriate remedy was by appeal. Defendants also sought an emergency writ and a stay order from the Louisiana Supreme Court, which was granted on October 18, 1996. The stay order was to continue in effect pending appeal and the case was remanded to this court to consider the appeal.
Defendants urge two assignments of error on appeal. In their first assignment of error, defendants argue that the order of the Council was not entitled to full faith and credit under the due process clause of the Fourteenth Amendment of the United States Constitution because they did not receive notice of any hearing regarding plaintiff's revocation of her consent to the adoption. In their second assignment of error, defendants contend that the Indian Child Welfare Act, 25 U.S.C. §§ 1901-1963 ("ICWA"), did not apply in this case so as to vest exclusive jurisdiction over this matter with the Council and *950 preclude any state court action. We will address these assignments of error in inverse order.

DISCUSSION

Exclusive Jurisdiction Under the ICWA
Defendants argue that the ICWA's exclusive jurisdiction applies only when an existing Indian family will be broken up or an Indian child will be removed from an Indian environment. Defendants contend that in the present case A.G.O. is not being removed from an Indian environment because she has had no contact with the tribe since she was 14-months old. They also claim that an Indian family is not being broken up and that A.G.O. will be exposed to the Indian culture since the adoptive father is of Indian descent.
The ICWA defines a "child custody proceeding" to include any proceeding involving foster care placement, termination of parental rights, preadoptive placement or adoptive placement. The only two exceptions from that definition are awards of custody to one of the parents in divorce proceedings and placements related to delinquency proceedings. 25 U.S.C. § 1903(1). The ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).
Under § 1911(a) the tribal court has exclusive jurisdiction "over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." The section further states, "Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction notwithstanding the residence or domicile of the child." Section 1913(c) of the ICWA states:
In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent.
Defendants rely heavily on the case of Hampton v. J.A.L., 27,869 (La.App.2d Cir. 7/6/95), 658 So.2d 331, in support of their argument that the ICWA is inapplicable to the present case. In that case, an Indian mother, shortly after giving birth to a daughter in Shreveport, Louisiana, executed a Voluntary Act of Surrender For Adoption under Louisiana law. She also informed her native tribe that she did not want the tribe involved in the matter and the tribe explicitly declined jurisdiction. After the natural father's parental rights were terminated, the Indian mother filed a pro se affidavit demanding the return of her daughter. The mother subsequently filed a notarized "Revocation of Voluntary Consent," revoking her consent to the adoption and requesting that her child be returned to her under the ICWA. After the mother filed a Motion to Dismiss Adoption Proceedings and Writ of Habeas Corpus, the adoptive parents answered maintaining that the ICWA did not apply and that the Indian mother was not entitled to the return of her daughter under state law. The trial court allowed the mother to withdraw her consent to the adoption under the ICWA, but denied her writ of habeas corpus and awarded the sole care, custody and control of the child to the adoptive parents.
This court reversed that portion of the trial court's judgment which decreed that the ICWA applied in the case, and affirmed the judgment in all other respects. This court recognized that the ICWA provided exclusive tribal court jurisdiction for children domiciled or residing on a reservation, and concurrent but presumptively tribal jurisdiction in other cases. The majority, however, concluded, "Congress intended the Act apply only in situations involving the removal of children from an existing Indian family and Indian environment." Defendants argue that we should reach the same conclusion as the Hampton majority and find that the ICWA does not apply in this case.
The Hampton case, however, is easily distinguishable from the present case. The most important distinguishing factor is that the Hampton court was not dealing with *951 exclusive tribal jurisdiction based on a declaration of ward status as in the present case, but was determining exclusive tribal jurisdiction based on the residence or domicile of the child.
Hampton is further distinguishable from the present case on its facts. In Hampton, the Indian mother gave birth to the child in Louisiana and executed a Voluntary Act of Surrender For Adoption under Louisiana law. In contrast, A.G.O. was born in Alaska and the plaintiff voluntarily relinquished her parental rights before the Council. The Indian mother in Hampton also specifically requested that her native tribe not get involved in the matter, and the tribe explicitly declined jurisdiction over the matter. In addition, the adoptive parents in Hampton originated the proceedings in Louisiana state court when they filed a motion for a rule to terminate the alleged natural father's parental rights. In the present case, plaintiff has never requested that the Council not get involved in this matter and, in fact, no court other than the Council has been involved in these proceedings until plaintiff attempted to enforce the Council's order in Louisiana.
In the present case, the parties do not dispute the fact that this is a "child custody proceeding", and the parties stipulated that A.G.O. is a lineal descendant of the native Village of Kotzebue and, thus, would be an "Indian child" under the ICWA. Since this is a child custody proceeding involving an Indian child, we conclude that the ICWA is applicable in the present case.
Since we conclude that the ICWA does apply in the present case, we now turn to a discussion of whether the Council has exclusive jurisdiction under the Act. Defendants argue that since A.G.O. had been in their physical custody since March, 1992, there was no need for the Council to declare the child a ward of the court in its Resolution 95-04 on February 13, 1995. This argument, however, is not sufficient to defeat the Council's exclusive jurisdiction under the ICWA. Resolution 95-04 specifically states, "A.G.O. is a ward of the Kotzebue IRA Council."
We conclude that by declaring A.G.O. to be a ward in Resolution 95-04, the Kotzebue IRA Council was establishing its exclusive jurisdiction in handling the adoption of A.G.O. in accordance with the ICWA § 1911(a). As previously stated, at the time of the adoption of Resolution 95-04, no action had been taken in this matter in any other court. The fact that defendants already had physical custody of A.G.O. did not preclude the Council from exercising its exclusive jurisdiction. See In the Matter of the Parental Placement of M.R.D.B., a minor child, 241 Mont. 455, 787 P.2d 1219 (1990), wherein the Supreme Court of Montana determined that the tribal court had exclusive jurisdiction under the ICWA § 1911(a) when the tribal court accepted jurisdiction over the case after the Indian mother had already given physical custody of the child to the adoptive parents, but then revoked her consent before the tribal court, and the tribal court specifically referred to the child as a ward in subsequent orders.

Full Faith and Credit
Defendants argue that the trial court should not have given full faith and credit to the Council's order because they did not receive any notice of the "proceedings" regarding plaintiff's revocation of consent and, thus, their rights under the due process clause of the Fourteenth Amendment of the United States Constitution were violated. As we previously noted, the ICWA, under § 1913(c), allows the withdrawal of the parent's consent to the termination of parental rights or adoptive placement for any reason at any time prior to the entry of a final decree of termination or adoption, and the child shall be returned to the parent. Since, however, we have determined that the Council has exclusive jurisdiction over this matter, we conclude that this "due process" challenge must be directed to the Council.
Defendants argue that we should consider the length of time A.G.O. has been in their custody and the bonding that has occurred between themselves and the child. While we agree that a family bond may have developed, and separation at this point may cause pain and hardship, due to the Council's exclusive jurisdiction under the ICWA, the *952 best interest of the child is not the question for this court to decide.

CONCLUSION
For the foregoing reasons we affirm the judgment of the trial court. The costs of this appeal are assessed to the appellants.
AFFIRMED.